HIRSH & SCHOFIELD, INC., Respondent, *v.* AAGE GUSMER, Appellant.

First Department, June 8, 1917.

Injunction — restraining prior employee from selling product — principal and agent — breach of duty — when employee not enjoined from securing agency for his own benefit.

In a suit by the plaintiff to restrain a former employee from selling a certain product, and requiring him to account for all sales made by him thereof, it appeared that the parties had had a joint agreement between them and the manufacturers for the sale of said product; that the plaintiff, after failing in negotiations with the defendant to secure his interest in the agreement, endeavored to obtain the sole agency from the manufacturers, but was unsuccessful, and the manufacturers canceled the agreement; that the defendant had paid a portion of the expenses of carrying on the business and was not a mere salesman, and that upon learning that the plaintiff was attempting to have him eliminated from the contract, he opened negotiations with the manufacturers to secure

First Department, June, 1917.    [Vol. 179.

the right to continue the business himself, and under the terms of his contract of employment providing that either of the parties might terminate the agreement upon thirty days' notice, gave such notice on September twenty-seventh and on October fourth sent out to his trade circular letters notifying customers that he had severed his connection with the plaintiff, to take effect October twenty-seventh, stating "Beginning with said date I will be in a position to offer you the same articles and give you the same careful and faithful service as in the past," etc.

*Held*, that since prior to the commencement of the action the contract which gave right to the plaintiff to sell the article had been canceled by · the manufacturers, an injunction restraining the defendant from thereafter selling said article did not inure to the benefit of the plaintiff;

That this is not a case of an employee who secretly dealt with one of his employer's principals and secured for his own benefit the agency that had theretofore existed in favor of his employer;

That since during the thirty days intervening between the notice and the date of the termination of the contract, the defendant did not divert any orders from the plaintiff, he is not guilty of a breach of duty.

Even if the sending out of the circulars by the defendant was a breach of his duty, the plaintiff is only entitled to restrain defendant from sending out such circulars and should not be granted an injunction compelling him to abandon his business.

APPEAL by the defendant, Aage Gusmer, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 10th day of November, 1916, upon the decision of the court after a trial at the New York Special Term, enjoining the defendant and directing an accounting.

*Louis Salant,* for the appellant.

*Benjamin Reass,* for the respondent.

PAGE, J.:

The action is brought to restrain the defendant, who was a former employee of the plaintiff, from selling in any manner the product known as " Mammut " and required him to account for all sales made by him of " Mammut." The first contract of employment between the plaintiff, as a copartnership prior to its incorporation, and defendant was made in September, 1912, and is peculiar, in that the defendant was to carry on the business in his own name at an address separate from that of the plaintiff, but that the plaintiff had entire charge of the business of the defendant. Any goods

that the defendant sold were billed by the plaintiff on bill-heads containing the defendant's name. All correspondence that was received addressed to the defendant was opened and answered by the plaintiff in the name of the defendant and on his letter-heads. The purpose of this would seem to be to give the impression to the defendant's customers that they were dealing with him individually, he appearing to be well acquainted with the trade. While this contract was in force the defendant learned of and called to the attention of the plaintiff a patent substance called "Mammut" which was being successfully used in Germany by being applied to the interior of beer vats and other brewers' utensils in the place of pitch or varnish, and at defendant's suggestion the plaintiff, in the defendant's name, ordered from their correspondent in Europe some of this "Mammut." In May, 1913, it was suggested, whether by Mr. Hirsh or by the defendant is a matter of dispute, but is of little importance, that the defendant go to Germany and strive to obtain a contract for the sole agency for the United States for the sale of "Mammut." Mr. Hirsh testified that it was his suggestion that the contract should be taken jointly in the names of the plaintiff and defendant. The defendant went to Berlin and succeeded in obtaining a joint contract for the sole agency. This contract was mailed to the plaintiff and was signed by them and returned. Mr. Hirsh testified that he and his partner discussed the possibility of complications arising by reason of the contract being taken in the name of their firm and the defendant jointly, but says that he never criticised the defendant nor found any fault with him, but on the contrary expressed himself as entirely satisfied with the contract. The plaintiff then proceeded to advertise "Mammut," and in all cases put the names of themselves and the defendant as the sole agents at their several addresses. The development of the "Mammut" business seems to have been largely, if not exclusively, in the hands of the defendant, and he was enabled to develop a substantial business. As this article required a man of some skill and experience to apply, the advisability was first discussed of bringing a man from the manufacturers in Germany, but the manufacturers demanded such a high rate of compensation that the defendant suggested that his

brother be educated to the business and brought over to America, and in May of 1914 the defendant visited Germany and had his brother instructed in the business, bearing the expenses thereof himself, and had his brother come to America. After he returned, the plaintiff refused to pay the expenses of the education of the brother, but employed him, charging, however, one-half of his salary against the defendant's account, crediting twenty-five per cent of moneys received for the brother's work. They also charged against defendant's account the employer's liability insurance for his brother and a proportion of the advertising expenses of the " Mammut." In July, 1914, another agreement of employment was entered into under similar terms and conditions as that theretofore existing, with the exception that the compensation of the defendant was increased. In the latter part of 1914 or the early part of 1915 the plaintiff discussed with the defendant the incorporation of the company for the purpose of taking over the agency of " Mammut," and offered the defendant ten per cent of the stock, which the defendant refused. In the summer of 1915 Mr. Hirsh went to Germany and attempted to get the manufacturers to cancel the existing contract and make a new contract with the plaintiff, thus excluding the defendant. In this he failed. Under the terms of the contract of employment it was provided that either of the parties might terminate this contract upon giving to the other party thirty days' previous written notice of their desire so to terminate the same. On the 27th day of September, 1915, the defendant gave notice of the termination of this agreement. On October fourth he sent out to his trade upon the letterheads that he had up to that time been using, a circular letter in German notifying them that he had severed his connection with the plaintiff, to go into effect on October 27, 1915, stating: " Beginning with said date I will be in a position to offer you the same articles and give you the same careful and faithful service as in the past and I earnestly hope that the pleasant relations existing between us in the past will continue."

This letter also states that he is taking this step under a full understanding with the manufacturers of " Mammut " and arranged with them to conduct their various business matters independently and on his own account. It would

appear that there had been some correspondence between the defendant and the manufacturers of "Mammut," the exact purport and tenor of which is not before us, by reason of the fact that the plaintiff's objection to the introduction of this correspondence in evidence had been sustained. The defendant, however, testified that his understanding with them was simply that they would sell to him under the agency contract any "Mammut" that he might need, but that he did not obtain, nor did he thereafter advertise or claim to have the exclusive agency. On May 9, 1916, the manufacturers of "Mammut" notified the plaintiff that they had canceled the contract theretofore existing between them and the plaintiff and defendant jointly. The learned court at Special Term has granted a decree that the defendant individually or by means of a firm name or corporation and his or its agents, servants and employees be permanently enjoined from directly or indirectly dealing in or selling, offering to sell or procuring to be sold the product known as "Mammut," or in any manner or form advertising the same, and that he and they account for all "Mammut" sold by them and moneys received therefor. In this I am of opinion that the justice at Special Term was in error. In the first place, prior to the bringing of this action the contract which gave the right to the plaintiff to sell "Mammut" had been canceled by the manufacturers thereof, and, therefore, an injunction restraining the defendant from thereafter selling "Mammut" did not inure to the benefit of the plaintiff. In the next place, I am of opinion that there was no violation of duty on the part of the defendant toward the plaintiff. The contract between the manufacturers of "Mammut" and the plaintiff and defendant was a joint contract. That the defendant had rights and interests therein separate from his merely representing the plaintiff as a salesman is shown from the dealings of the parties, in that a portion of the expenses of carrying on and advertising that particular branch of the business was charged against the defendant and paid for out of his commission. Furthermore, the plaintiff negotiated with the defendant to secure this interest. Hence, this is not a case of an employee who secretly dealt with one of his employer's principals and secured for his own benefit the agency that had theretofore existed

in favor of the employer. The defendant appears to have done nothing in this matter until apprised that the plaintiff was attempting to have him eliminated from the benefit of the contract when he seems to have opened negotiations in his own behalf and not for the exclusion of the plaintiff, but to secure his own right to continue to do business under the contract even if the relation theretofore existing between himself and the plaintiff was severed. Nor does the defendant appear to have done anything while in the employ of the plaintiff to militate against its interest, except the preparations, which were made after the notice of termination of the contract had been given, for him to enter in business for himself. It might have been well for the defendant to have waited until October twenty-seventh before sending out the notices that he was about to engage in business, but the form of that notice expressly states that the existing relation is to be terminated on October twenty-seventh and that on and after that date he would be prepared to receive orders. It has not been proved or suggested that during the thirty days intervening between the notice and the date of the termination, the defendant diverted any orders from the plaintiff or otherwise violated its confidence.

There is an English case (*Nichol* v. *Martyn*, 2 Esp. 732) in which a traveling salesman on occasion of his last trip, and while still in the employ of the plaintiffs, informed the customers from whom he had been soliciting orders for the plaintiffs, that he would shortly go into the same business for himself and that he would then be pleased to accept their orders for his own account. The complaint was dismissed, the court holding: " A servant while engaged in the service of his master, has no right to do any act which may injure his trade, or undermine his business; but every one has a right, if he can, to better his situation in the world; and if he does it by means not contrary to law, though the master may be eventually injured, it is *damnum absque injuria*. There is nothing morally bad, or very improper in a servant, who has it in contemplation at a future period to set up for himself, to endeavor to conciliate the regard of his master's customers, and to recommend himself to them, so as to procure some business from them as well as others. In the present case,

the defendant did not solicit the present orders of the customers; * * * his request of business for himself was prospective, and for a time when the relation of master and servant between him and the plaintiffs would be at an end."

But even if there were a dereliction in duty by sending out this circular, the only relief to which the plaintiff would be entitled would be to restrain defendant from sending out such circulars and would not afford a basis for an injunction compelling him to abandon his business.

The judgment should be reversed and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING, SMITH and SHEARN, JJ., concurred.

Judgment reversed and complaint dismissed, with costs. Order to be settled on notice.